## THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *ex rel.* GEOFFREY HOWARD | ) | |
| AND ZELLA HEMPHILL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:11-cv-04022-MMM-JEH |
| | ) | |
| KBR, INC. AND KELLOGG BROWN & | ) | Judge Michael M. Mihm |
| ROOT SERVICES, INC., | ) | Magistrate Judge Jonathan E. Hawley |
| | ) | |
| Defendants. | ) | |
| | ) | |

## NOTICE REGARDING DESTRUCTION OF DATA

Defendants KBR, Inc. and Kellogg Brown & Root Services, Inc. ("KBR") hereby file this Notice to provide an update regarding KBR's plan to destroy data impacted by the data spill. Prior to filing this Notice, KBR provided this same information to Relators by letters dated June 6, 2022, and July 22, 2022.

KBR previously provided the Court detailed information about the circumstances of the data spill (*see, e.g.*, KBR Opp'n, Exhibit 5, Decl. of Scott Booth ¶¶ 3-10 [Dkt. 121-5] (Jun. 29, 2018)), and provides a short summary here. Following discovery of purportedly classified materials in KBR's electronic discovery system, which the Government sent to KBR in error, the Defense Security Service ("DSS") ordered KBR in January 2015 to shut down and secure its electronic discovery system containing certain LOGCAP III related documents and prohibited KBR from accessing that data and the source media. For purposes of discovery in this case, KBR loaded and cleaned impacted data in a secure facility and incurred approximately $55,000 to $60,000 each month for secure facility and equipment leases, storage, and equipment maintenance.

On November 28, 2018, KBR filed a Notice and Request for Status Conference in which it explained that it "intend[ed] to close this facility at the conclusion of the extended lease [scheduled for March 2019[,] . . . [that w]ithout an approved secure facility in which to cleanse data, all remaining data affected by the data spill will be rendered unavailable for discovery[,] . . . [and that KBR] intend[ed] to retain the impacted media sources themselves until approximately May 2019, at which time it intend[ed] to destroy all impacted media sources."  Notice at 4-5 [Dkt. 126].  Relators filed a response in which they stated that they had informed KBR "that they would not consent to KBR's destruction of evidence while the parties are engaged in discovery" and argued that "the Court should order KBR not to destroy its documents while discovery is ongoing." Rels.' Resp. at 1-2, 4-5 [Dkt. 127].  KBR subsequently informed the Court in May 2019 that it had agreed to defer the possible destruction of additional documents until November 2019 at the earliest and had agreed to provide Relators at least two weeks notice before it commences to destroy the documents."  Status Report at 5 [Dkt. 131]; *see also* Status Report at 9 [Dkt. 133]. Consistent with its Status Reports, in early 2019 after KBR had cleaned all custodial data it agreed to or was ordered to search and produce in this case, KBR dismantled the secure facility and moved the impacted data to a secure storage location with approval from DSS and the Army.  KBR's current cost to maintain the data in this facility is approximately $10,800 per month.  Since 2019, KBR has incurred $409,000 to maintain this data.

Consistent with KBR's 2019 agreement to provide Relators with a minimum of two weeks' notice prior to commencing destruction, on June 6, 2022, KBR sent Relators a letter to notify them of its intention to destroy the impacted data immediately but no sooner than two weeks from the date of the letter.  Exhibit A.  KBR explained its expectation that Relators would "have no concerns regarding the destruction of the inaccessible data since the parties are no longer engaged in fact

discovery." *Id.*  KBR also explained that all of the data that was cleaned, collected, and searched for this case (including KBR's productions) will be retained.  *Id.*

In a response dated June 16, 2022, Relators stated they "do not think it is appropriate for KBR to attempt to bind Relators, in any way, by soliciting their consent."  Exhibit B.  KBR replied that it is not seeking Relators' consent; rather, as Relators requested, KBR provided at least two weeks' notice before destroying the impacted data.  Exhibit C.

There are two categories of data KBR intends to destroy.  *First*, KBR intends to destroy custodial data that was identified as potentially classified through KBR's government-approved screening process and thus never loaded into KBR's e-discovery vendor's unsecure database.  *See generally* Decl. of Scott Booth (June 29, 2018) ¶¶ 5-10 [Dkt. 121-5].  This data is associated with individuals identified as custodians in all of KBR's LOGCAP III-related litigation during the time when KBR had to "clean" data for e-discovery purposes.  For this case, approximately 2% of all non-email files associated with the 40 custodians KBR was required to search (Minute Entry (Aug. 3, 2018), and 0.26% of all email files associated with those 40 custodians was identified as potentially classified.  The resulting "cleaned" data was subject to discovery, whereas the potentially classified "unclean" data was not.  KBR now intends to destroy this "unclean" and inaccessible data that was removed during this screening process.

*Second*, KBR intends to destroy custodial files associated with individuals whose data was not required to be produced in this case or any other LOGCAP III-related litigation.  Relators have never asked KBR to search the data associated with these custodians.  Fact discovery is now complete, and KBR no longer has a government-approved secure facility in which to clean additional custodial data.  Custodial files that have not been cleaned will be destroyed.

KBR assumes Relators requested two weeks' notice prior to destruction of the data so they could seek the Court's intervention if they believed there was a basis to prevent KBR from destroying the impacted data. As of the date of this filing, however, Relators have not asked the Court to prevent KBR from destroying the impacted data. Through this Notice, KBR now informs the Court and all attorneys of record that it intends to proceed with the destruction.

July 22, 2022                                    Respectfully Submitted,

                                                */s/ Tirzah S. Lollar*
                                                Tirzah S. Lollar
                                                Craig D. Margolis
                                                Owen Dunn
                                                ARNOLD & PORTER KAYE SCHOLER LLP
                                                601 Massachusetts Ave. NW
                                                Washington, D.C. 20001-3743
                                                (202) 942-6199
                                                tirzah.lollar@arnoldporter.com
                                                craig.margolis@arnoldporter.com
                                                owen.dunn@arnoldporter.com

                                                Jennifer L. Saulino
                                                COVINGTON & BURLING LLP
                                                One CityCenter
                                                850 Tenth Street, NW
                                                Washington, D.C. 20001-4956
                                                Phone: (202) 662-6000
                                                jsaulino@cov.com

                                                *Attorneys for Defendants KBR, Inc. and*
                                                *Kellogg Brown & Root Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this July 22, 2022, I caused the foregoing to be served by email upon all attorneys of record through the Court's Electronic Case Filing system.

*/s/ Owen Dunn*