E-FILED
Thursday, 29 September, 2022 05:21:01 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT 8

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* GEOFFREY HOWARD AND ZELLA HEMPHILL, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:11-cv-04022-MMM-JEH |
| v. | ) ) | |
| KBR, INC. AND KELLOGG BROWN & ROOT SERVICES, INC., | ) ) ) ) | Judge Michael M. Mihm Magistrate Judge Jonathan E. Hawley |
| Defendants. | ) | |

**SUPPLEMENT TO REBUTTAL EXPERT REPORT**

**OF**

**Gary M. Gaukler, Ph.D.**

July 28, 2022

1

1. My name is Gary Gaukler. I am a tenured Associate Professor of Operations Management at the Drucker School of Management at Claremont Graduate University. On June 27, 2022, I submitted a Rebuttal Expert Report on behalf of Relators (the "Rebuttal Report"). My qualifications and compensation are set forth in my Rebuttal Report.

2. I hereby submit this report as a Supplement to my Rebuttal Report. Relators' counsel provided KBR with my supporting data and a description of my supplemental analysis on July 6, but I have been asked to provide that same information in this formal Supplement.

3. As reflected in the July 6 email to KBR's counsel, I noted in paragraphs 134 and 135 of my Rebuttal Report that I would be incorporating specific information on cross-level denials into my model, and that I would be prepared to discuss that topic at my upcoming deposition. Several of KBR's experts have opined that I failed to consider many legitimate reasons why cross-levels would not be possible or reasonable. My Supplemental analysis quantifies that these objections are immaterial to my analysis.

4. I reviewed 788 specific cross-level denial lines drawn from the set of cross-level reports that KBR produced in discovery and that I discussed in paragraphs 133 and 134 of my Rebuttal Report. I have calculated the maximum effect that incorporating these denials could have on my model using an overly conservative approach. If any denial occurred for some or all of a particular cross-level request, stating any reason (even if inconsistent with KBR's own policies) or no reason at all, I made that item unavailable for cross-leveling from the denying site for the entire time period of the over-ordering model. In other words, I applied all denials, partial or complete, as if the denying storeroom said "we have never had any of this item available here and we never will." The combined reduction of my over-ordering numbers, using these extremely over-corrective assumptions, was less than $800,000.

5. Because I understand that KBR does not intend to take my deposition, I have been asked to provide some added detail about my specific methodology.

6. The model version I used to perform this analysis is identical to the model I used in my Affirmative Report, except for a single additional feature. When the model is started, it loads the 788 cross-level denial lines that I identified and described in Paragraphs 133 and

2

134 of my Rebuttal Report. Then, after the model determines how much inventory of a particular item was available for cross-leveling at the time of each purchase order, it checks these denial lines and sets the inventory balance of any storeroom that ever denied that item to zero, no matter when the denial took place, what the stated reason was, whether the denial was whole or partial, how much inventory was initially requested, or whether the denial was based on a MAXIMO error that the denying storeroom had subsequently corrected. This analysis expands a single denial for an item from a storeroom into a complete denial, by that storeroom, of all cross-leveling requests for that item, both before and after the actual denial date. As noted above, the total impact of this analysis was to reduce my over-ordering calculation by a total of less than $800,000.

By: _____
Gary M. Gaukler

July 28, 2022